**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL T. BUCKLEY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 24-4229** |
| | : | |
| **T-MOBILE, USA INC.** | : | |
| | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                    **August 29, 2024**

A Pennsylvania cellular service consumer claims he can pay his invoice to his cellular service provider T-Mobile by simply returning the remittance coupons and directing T-Mobile to transfer these coupons into securities. T-Mobile does not accept the remittance coupons as payment.  The consumer now pro se sues T-Mobile reading the law (including United Kingdom law) as requiring T-Mobile to accept the remittance coupon as payment and he does not need to pay cash or credit for the services.  He swears he suffered no injury because of T-Mobile's conduct. But he also seeks ten million dollars in damages claiming "these companies" take advantage of consumers by requesting payment in cash or check "when they have already been paid." We granted him leave to file his pro se complaint without paying filing fees given his indigent financial condition and now meet our Congressionally-mandated obligation to screen his allegations for merit.  He offers no support for this theory of not paying his bills with cash or credit.  His claim is frivolous as he admits no injury. But even assuming we could liberally construe his sworn statements of no injury to allow some form of economic harm, the consumer offers no legal theory within our limited jurisdiction excusing his unwillingness to pay for cellular service.  Nor can we think of such a claim based on the alleged facts. We dismiss his complaint with prejudice.

## I.    Alleged pro se facts

Michael T. Buckley attempted to pay T-Mobile for its cellular service by returning "remittance coupons" on January 10, February 1, February 21, June 12, and August 7, 2024.[1] Mr. Buckley alleges the "remittance coupons" can be "transferred into securities through BECCS & CUBES systems."[2] T-Mobile rejected the coupons as invalid payments.[3] Mr. Buckley admits he suffered no injury but seeks ten million dollars to let T-Mobile feel what he feels.[4]

## II.    Analysis

Mr. Buckley sues T-Mobile US, Inc. for violating the Code of Federal Regulations, the Trust Indenture Act of 1939, the Bill of Exchange Act of 1882, the Securities Exchange Act of 1934, and the Uniform Commercial Code.[5]

We granted Mr. Buckley leave to proceed without paying the filing fees after reviewing his sworn financial condition.[6] We now screen Mr. Buckley's Complaint consistent with our obligations under 28 U.S.C. § 1915(e)(2)(B). Mr. Buckley must state the grounds for our jurisdiction and include a "short and plain statement of the claim showing that the pleader is entitled to relief."[7] When considering whether to dismiss a complaint for failure to state a claim under section 1915(e)(2)(B), we apply the same standard provided in Federal Rule of Civil Procedure 12(b)(6).[8] Mr. Buckley can meet the Rule 12(b)(6) standard if he pleads "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"[9] We must dismiss Mr. Buckley's complaint under Rule 12(h)(3) if he does not plead subject matter jurisdiction.[10]

We are mindful of our obligation to liberally construe a pro se complaint.[11] We hold a pro se complaint to "less stringent standards than formal pleadings drafted by lawyers."[12] But "pro se

litigants still must allege sufficient facts in their complaints to support a claim" and "they must abide by the same (procedural) rules that apply to all other litigants."[13]

Liberally construed, Mr. Buckley claims he need not pay his bill with cash or credit. He thinks he can pay with remittance coupons because he assumes T-Mobile sells his personal information and need not be paid twice.  So he simply sends back the remittance coupon and does not pay. Mr. Buckley alleges T-Mobile wrongfully refused to accept the tear-off portion of a T-Mobile bill — the lower portion of the bill — as a form of payment.[14] Mr. Buckley does not allege a fact to allow us to plausibly infer this remittance coupon is a bond, corpus, bond coupon, or investment security.

Mr. Buckley lacks standing because he admits no injury. Mr. Buckley still does not state a claim within our limited federal jurisdiction even if he pleaded an injury. He does not allege sufficient facts to suggest a plausible entitlement to relief and the laws he cites do not provide legal redress for possible injury.

### A.  Mr. Buckley admits no injury.

Mr. Buckley swore he suffered no injury.[15] He is bound by his judicial admission.[16] The Supreme Court instructed the constitutional minimum of standing contains three elements; the first and most important one is the plaintiff must have suffered an injury.[17] Mr. Buckley lacks standing. We must dismiss his complaint under Rule 12(h)(3) for lack of subject matter jurisdiction.

### B.  Mr. Buckley cannot state a claim excusing his obligation to pay his bill with money.

Mr. Buckley must state a claim upon which relief can be granted even if he did not swear suffering no injury. He does not plead sufficient facts and connect the facts to specific law. There is no recognizable legal cause of action under which Mr. Buckley could seek relief. An attempt to amend to somehow excuse his obligations under federal law is futile.

**1. Mr. Buckley cannot state a claim under the Code of Federal Regulations.**

Mr. Buckley claims T-Mobile violated the Code of Federal Regulations. The Code of Federal Regulations codifies general and permanent rules published by the executive departments and agencies of the Federal Government to interpret and enforce federal statutes.[18] It contains fifty titles and covers broad areas.[19] A regulation by itself does not provide a private right of action allowing individual citizens to sue. A regulation can only create a private right of action when Congress creates such right through the underlying law.[20] Mr. Buckley does not link the alleged facts to a specific regulation. We have no basis to find an unpleaded regulation provides Mr. Buckley with a private right of action for violating the regulation.

**2. Mr. Buckley cannot state a claim under the Trust Indenture Act of 1939.**

Mr. Buckley claims T-Mobile violated the Trust Indenture Act of 1939. Congress, through the Trust Indenture Act of 1939, regulates, among other things, "the sale of certain securities in interstate and foreign commerce and through the mails, and the regulation of the trust indentures under which the same are issued."[21] Our Court of Appeals instructs the Act provides injured debenture holders with a federal cause of action.[22]

Mr. Buckley does not allege a fact involving the sale of securities or a trust indenture. He does not and cannot state a plausible claim for relief under the Trust Indenture Act of 1939 against T-Mobile arising from his method of paying his cell phone bill.

**3. Mr. Buckley cannot plead our jurisdiction under the Bill of Exchange Act 1882.**

Mr. Buckley claims T-Mobile's decision to not accept remittance coupons violated the Bill of Exchange Act 1882. The Act is not a law of the United States but of the United Kingdom. Our colleagues counsel an "unexplained reference" to this Act does not provide a federal cause of

action and the United Kingdom law has "no application" in the United States.[23] Mr. Buckley does not plead a fact enabling us to find federal jurisdiction based on this foreign law.

### 4.   Mr. Buckley cannot state a claim under the Securities Exchange Act.

Congress, through the Securities and Exchange Act of 1934, regulates transactions of securities in the secondary market between parties which are not the original issuer.[24] Congress provides a private right of action in several sections. For example, Section 10(b) and Rule 10b-5 together allow private lawsuits against securities fraud.[25] Section 18(a) allows injured individuals to sue for damages caused by false or misleading statements in SEC filings.[26]

Mr. Buckley does not plead a fact involving the sale of securities in the secondary markets. Mr. Buckley alleges large companies traded customers' information on "secondary markets."[27] Mr. Buckley's secondary markets are not the same "secondary markets" used in the securities context. He cannot state a plausible claim for relief under the Securities and Exchange Act of 1934.

### 5.   Mr. Buckley cannot state a claim under the Uniform Commercial Code.

The Uniform Commercial Code is a comprehensive set of proposed laws for commercial transactions in the United States.[28] It is not a federal law, but a model code an individual state may adopt.[29] The Pennsylvania General Assembly adopted a commercial code governing sales, negotiable instruments, investment securities, secured transactions, among others.[30] State laws generally do not involve a federal question triggering federal jurisdiction.[31] Mr. Buckley does not plead sufficient facts and does not reference specific sections of the Pennsylvania Commercial Code.  He does not and cannot plead a section of the Pennsylvania Commercial Code requires T-Mobile to accept remittance coupons as payment for its services.

### III.   Conclusion

Mr. Buckley admits he suffered no injury but still seeks ten million dollars because T-Mobile refused his "remittance coupon" payments.  He is bound by his judicial admission. He also does not plead facts to state a plausible claim upon which legal relief can be granted. We dismiss the claim with prejudice as he cannot state a claim against T-Mobile for its decision to not accept remittance coupons as payment for its bills.

---

[1] ECF No. 2 at 4.

[2] ECF No. 2 at 4. BECCS & CUBES systems are U.S. Treasury programs converting "stripped bearer securities" into book-entry securities that can be held in commercial book-entry accounts with brokers and financial institutions. Both BECCS and CUBES programs ended in 2006. They have no connection to the upper or lower part of a bill statement. *See Treasury Marketable Securities*, https://www.savingsbonds.gov/marketable-securities/historical-information/beccs-cubes/.

[3] *Id.*

[4] *Id*. at 5.

[5] *Id*. at 4. Mr. Buckley alleges the ten million dollars in damages represents a small portion of what T-Mobile obtains by selling users' confidential information on "secondary markets." *Id.* at 5.

[6] ECF No. 4.

[7] Fed. R. Civ. P. 8(a)(1)–(2).

[8] *Elansari v. Univ. of Pa.*, 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[10] Fed. R. Civ. P. 12(h)(3).

[11] *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).

[12] *Shorter v. United States*, 12 F.4th 366, 371 (3d Cir. 2021) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

[13] *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)).

[14] ECF No. 2. Mr. Buckley does not describe the "remittance coupons" he used to pay T-Mobile. We infer he is referring to the tear-off portion of a T-Mobile bill. Mr. Buckley seems to distinguish between the lower part of a bill, which he calls a "remittance coupon," and the "top portion of a bill, which he calls a "security/bond." *Id.* at 4. Mr. Buckley's irrelevant allegation "corporations" profit from selling their customers' private information does not state a claim. Mr. Buckley does not, nor can he, connect this theory to T-Mobile's decision to not accept his remittance coupons as payment for its services.

[15] ECF No. 2 at 5.

[16] *See Sunlight Elec. Contracting Co. v. Turchi*, 918 F. Supp. 2d 392, 396 (E.D. Pa. 2013) ("It is well-settled that judicial admissions, or factual assertions in a party's pleadings, are binding on the party asserting them.").

[17] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

[18] *About the Code of Federal Regulations*, National Archives, https://www.archives.gov/federal-register/cfr/about.html#:~:text=The%20Code%20of%20Federal%20Regulations%20(CFR)%20is%20the%20codification%20of,agencies%20of%20the%20Federal%20Government.

[19] *Id.*

[20] *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).

[21] Pub. L. No. 76-253, 53 Stat. 1149 (codified as amended at 15 U.S.C. §§ 77aaa–77bbbb).

[22] *Zeffiro v. First Pennsylvania Banking & Tr. Co.*, 623 F.2d 290, 301 (3d Cir. 1980).

[23] *See Thomas v. Wells Fargo Bank,* No. 23-206, 2024 WL 478068, at *7–*8 (S.D. Ala. Jan. 12, 2024); *Payne v. Spectrum*, No. 23-1313, 2023 WL 8681199, at *2 (W.D. Tex. Dec. 15, 2023).

[24] 15 U.S.C. § 78a *et seq*.

[25] *See City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 679 (3d Cir. 2023) ("Together, § 10(b) and Rule 10b-5 imply a private cause of action for securities fraud.").

[26] 15 U.S.C. § 78r(a).

[27] Mr. Buckley provides only a general statement but does not allege T-Mobile sells his personal information. ECF No. 2.

[28] Uniform Law Commission, https://www.uniformlaws.org/acts/ucc (last visited Aug. 21, 2024).

[29] *Id.*

[30] 13 PA. CONS. STAT. §§ 1101–12107.

[31] *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).